FILED
 2007 Sep-21 PM 12:32
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **ROSETTA JONES,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Civil Action No. 05-S-2300-S |
| | ) |
| **HILLCREST BEHAVIORAL** | ) |
| **HEALTH,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

This employment discrimination case, which was closed on December 7, 2006,[1] is back before the court on defendant's motion for attorneys' fees, filed pursuant to several federal statutes.[2] *See* 29 U.S.C. § 626(b); 28 U.S.C. § 1927; 42 U.S.C. § 2000e-5(k); 42 U.S.C. § 1988. Although the Supreme Court has admonished that "[a] request for attorney's fees should not result in a second major litigation," *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), that is exactly what this court confronts today. For the reasons articulated below, the motion will be denied.

## I.  BACKGROUND

Plaintiff, Rosetta Jones, filed the instant lawsuit on November 9, 2005, naming

---

[1] Doc. no. 19 (Order Dismissing Case).

[2] Doc. no. 21 (Defendant's Motion for Attorneys' Fees) (citing the statutes set out in the main text above).

her employer, Hill Crest Behavioral Health, as the sole defendant.[3]  The three-page complaint drafted and filed by her attorney, Henry L. Penick, is, frankly, a legal and linguistic train wreck.  The first sentence indicates that "[t]his suit is a suit for race discrimination authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964."[4]  By the end of the opening paragraph, however, plaintiff's counsel informs the court that its jurisdiction "is invoked to secured [*sic*] protection of and redress deprivation of rights secured by statutes . . . providing for injunctive and other relief against *race* and *age discrimination* and *retaliation*."[5]

Finally, in a section of the complaint captioned "parties," Mr. Penick explains that "plaintiff filed a charge of [d]isability [d]iscrimination with the Equal Employment Opportunity Commission [("EEOC")]."[6]  No other mention of disability discrimination, or any federal statutes proscribing such discrimination, appears in the complaint; moreover, the physical placement of this allegation in the factual discussion suggests that it was included merely to demonstrate plaintiff's participation in protected activity as a predicate for her retaliation claim.  Even so, Mr. Penick went ahead and listed "[d]isability discrimination" in the description of

---

[3] Doc. no. 1 (Complaint).

[4] *Id*. at § I, ¶ 1.

[5] *Id*. (emphasis supplied).

[6] *Id*. at § II, ¶ 6.

his client's general claims in the parties' joint discovery plan.[7]

Moreover, at various points in her deposition, plaintiff — who was clearly confused by the quasi-legal nature of the questions that she was being asked, and apparently quite emotional to boot — also stated that she was claiming discrimination on the basis of her *race*, *sex*, *age*, *religion*, and *disability*.[8] Eventually, she backed down (to a degree), confessing that she did not believe any adverse actions were taken against her on the basis of her race or her age.[9] In an affidavit filed in response to the present motion, plaintiff alleges that her *only* intent, from the beginning of the case, was to bring suit for *retaliation*.[10] Additionally, Mr. Penick has represented to the court that he "mistakenly included" the allegations pertaining to race and age discrimination in the complaint.[11]

Regardless of how these allegations made their way into the complaint, defendant's gripe is not necessarily their *inclusion*, but the failure on the part of plaintiff and her attorney to *dismiss* those superfluous claims in a timely manner.

---

[7] Doc. no. 8 (Joint Report of the Parties' Planning Meeting), p. 1.

[8] *See* doc. no. 12 (Defendant's Motion for Summary Judgment), Ex. 1 (Deposition of Rosetta Jones), pp. 52, 75-79.

[9] *Id*. at pp. 72, 79.

[10] Doc. no. 25 (Plaintiff's Opposition to Attorneys' Fees), Ex. 1 (Affidavit of Rosetta Jones), ¶¶ 5-6.

[11] Doc. no. 25, p. 2. A fair reading of the complaint does not reveal any express claims for relief on the basis of sex discrimination, religious discrimination, or disability discrimination.

Indeed, after plaintiff's deposition, and several months prior to the dispositive motion deadline, defense counsel wrote Mr. Penick a lengthy and detailed letter attacking both the claims asserted in plaintiff's complaint and those she articulated at her deposition.[12]  With respect to the nominal race discrimination and age discrimination claims, defense counsel quoted the portions of plaintiff's deposition in which she disavowed any intent to bring such claims; he also pointed out that plaintiff failed to administratively exhaust any allegations of racial, sexual, religious, or age discrimination.[13]

The letter made no mention of any ostensible disability discrimination claim, but defense counsel did go on to argue that plaintiff should dismiss her remaining retaliation claim on the ground that she failed to timely file suit.[14]  Plaintiff's retaliation claim was apparently based on both Title VII and 42 U.S.C. § 1981;[15] but, in the letter, defense counsel treated the claim as though it was pled exclusively under Title VII.

---

[12] *See* doc. no. 23 (Affidavit of Mark Peters), Ex. 5 (Letter from Mark Peters).

[13] *See id.* at pp. 1-2.

[14] *See id.* at pp. 2-3.

[15] Doc. no. 1, § I, ¶ 1.  The Eleventh Circuit has "recognized that § 1981 includes a cause of action for retaliation, although the elements of a claim for retaliation under § 1981 are not settled." *Everson v. Coca-Cola Co.*, No. 06-15752, 2007 WL 2088839, at * 1 (11th Cir. July 23, 2007) (citing *Bass v. Board of County Commissioners*, 256 F.3d 1095, 1120 n. 10 (11th Cir. 2001)).  *See also generally Andrews v. Lakeshore Rehabilitation Hospital*, 140 F.3d 1405, 1410-13 (11th Cir. 1998).

Title VII-based actions must be brought within ninety days of the date on which the complainant receives notice that the EEOC has issued a right to sue letter. *See Green v. Union Foundry*, 281 F.3d 1229, 1233-34 (11th Cir. 2002) (citing 42 U.S.C. § 2000e-5(f)(1); *Santini v. Cleveland Clinic Florida*, 232 F.3d 823, 825 (11th Cir. 2000)). In the present case, plaintiff made her Title VII-based claim of retaliation known to the EEOC through a formal charge of discrimination filed on July 28, 2004.[16] By letter dated March 29, 2005, Mr. Penick requested that the EEOC issue a right to sue letter; it complied on March 31, 2005, but erroneously dated the letter March 31, 2004, one year earlier.[17] Since this error made it appear that any suit would be untimely, several months later Mr. Penick requested that the EEOC re-issue the right to sue letter with an accurate date.[18] That agency did so on August 4, 2005, but plaintiff claims not to have received the re-issued letter until August 8, 2005.[19] Mr. Penick filed plaintiff's complaint in federal court on November 7, 2005.[20]

In defense counsel's letter, he asserted that there was a ninety-eight day lapse between the re-issuance of the right to sue letter and the filing of this lawsuit; thus,

---

[16] Doc. no. 25, Ex. 3 (Charge of Discrimination).

[17] *Id.* at Ex. 4 (Right to Sue Letter).

[18] Doc. no. 25, p. 2.

[19] *Id.* at Ex. 1, ¶ 3; *id.* at Ex. 8 (Affidavit of Henry Penick), ¶ 4.

[20] Doc. no. 1.

he contended that plaintiff's retaliation claim was untimely.[21] As a point of fact, this calculation is incorrect: only ninety-five days passed between August 4, 2005, and November 7, 2005. But that is irrelevant. For one thing, "statutory notification is complete only upon *actual receipt* of the suit letter," *Zillyette v. Capital One Financial Corp.*, 179 F.3d 1337, 1339 (11th Cir. 1999) (internal quotations and citation omitted) (emphasis supplied), and the evidence here indicates that plaintiff received the letter on August 8, 2005, not August 4, 2005, when it was written.[22] Thus, the ninetieth day following plaintiff's receipt of the letter was November 6, 2005 — but that was a Sunday, so plaintiff filed suit the next day, November 7, 2005.[23] *See Pearson v. Furnco Construction Co.*, 563 F.2d 815, 819 (7th Cir. 1977) (holding that "when the ninetieth calendar day is a Saturday, Sunday, or holiday, the [statutory] period [for filing suit] does not expire until the end of the next day which is none of these three").

Accordingly, assuming the ninety-day statutory period for the filing of suit was renewed with the re-issuance of the right to sue letter, plaintiff's Title VII-based retaliation claim was timely filed. Defendant's contention in the letter, however, was that a second notice or right to sue letter "'tolls the limitation period only if the EEOC

---

[21] Doc. no. 25, Ex. 3, p. 3.

[22] *See id.* at Ex. 1, ¶ 3; *id.* at Ex. 8, ¶ 4.

[23] *See* doc. no. 1.

issues such [n]otice pursuant to a reconsideration on the merits,'"[24] which is not what occurred here.[25]  Defense counsel closed his letter by stating that "[c]ontinued litigation of this claim will be in bad faith," and warning that failure to dismiss the entire action with prejudice within thirty days would force defendant to "pursue every available remedy it has."[26]  Anticipating voluntary dismissal, defense counsel "purposefully did not begin drafting a summary judgment motion until [the thirty days] passed with no response from Mr. Penick."[27]  Nearly one month after that date, and only one week prior to the dispositive motion deadline, Mr. Penick finally responded.

By letter, Mr. Penick reiterated that his client "is not pursuing a claim for race or age discrimination; nor is she making a claim for disability, sex, or religious discrimination."[28]  Despite these concessions, Mr. Penick insisted that "there are disputed issues which survive, such as her [§] 1981 claim for retaliation."[29]  Although

---

[24] Doc. no. 23, Ex. 5, p. 3 (quoting *Santini*, 232 F.3d at 825) (bracketed alteration added).

[25] Plaintiff's apparent response to this is that the EEOC's re-issued right to sue letter was prefaced with a piece of correspondence titled "Notice of *Reconsideration*." Doc. no. 25, Ex. 5 (Notice of Reconsideration) (emphasis supplied).  Notwithstanding its title, the text of this cover letter indicates that "[t]he Notice of Right to Sue [was] being rescinded *due to an error pertaining to the date of its issuance*," *id*. (emphasis supplied) — not on account of any re-examination of the *merits*.

[26] *Id*.

[27] Doc. no. 23, ¶ 7.

[28] *Id*. at Ex. 6 (Letter from Henry Penick).

[29] *Id*.

he did not elaborate, the court presumes this was a reference to the fact that there is no requirement for administrative exhaustion of § 1981 claims. *See Caldwell v. National Brewing Co.*, 443 F.2d 1044, 1046 (5th Cir. 1971).[30] *Accord Price v. M & H Valve Co.*, 177 Fed. Appx. 1, 9 (11th Cir. 2006); *Green v. Elixir Industries*, *Inc.*, 152 Fed. Appx. 838, 839 (11th Cir. 2005). Thus, even if the Title VII variation of plaintiff's retaliation claim was untimely, Mr. Penick felt that his client could proceed to trial with the same claim through reliance upon § 1981. Accordingly, he refused the request to voluntarily dismiss the case, and instead offered to settle for $10,000.[31]

Defendant refused the offer, and instead filed a motion for summary judgment on October 2, 2006.[32] The motion attacked each of the claims, whether raised by the complaint or by plaintiff herself during her deposition. With respect to the retaliation claim, defendant argued that it must be dismissed for failure to exhaust to the extent that it was based upon Title VII, and otherwise was due to be dismissed for failure to establish a *prima facie* case, and because there was no evidence of pretext.[33] The court set a briefing schedule for the motion, requiring a response by plaintiff on or

---

[30] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[31] Doc. no. 23, Ex. 6.

[32] Doc. no. 12.

[33] *Id*. *See also* doc. no. 13 (Defendant's Brief in Support of Summary Judgment).

before November 1, 2006.[34]  In lieu of a response, plaintiff moved to voluntarily dismiss all of her claims, albeit *without* prejudice, simply stating that she was "unable to discover sufficient facts to successfully controvert the motion for summary judgment."[35]  The court ultimately dismissed the case *with* prejudice.[36]  The present motion — in which defendant seeks $22,648.10 in attorneys' fees "jointly and severally, against [p]laintiff and her counsel" — followed.[37]

## II. DISCUSSION

Defendant argues that "[t]he decision by [p]laintiff and her counsel to file suit and pursue expensive and time-consuming litigation was frivolous and in bad faith."[38]  The motion draws no distinction between any of the claims at issue.  Rather, defendant argues that this entire lawsuit was meritless and unnecessary, and seeks fees incurred in the defense of all claims, whether formally alleged in the complaint or raised obliquely in plaintiff's deposition or discovery plan.

### A. 28 U.S.C. § 1927

One obvious source of authority for the award of attorneys' fees for the pursuit

---

[34] *See* Electronic "Stamp" Order Dated October 25, 2006.

[35] Doc. no. 14 (Plaintiff's Motion to Voluntarily Dismiss), ¶ 2.

[36] Doc. no. 19.

[37] Doc. no. 22, p. 2.  *See also* doc. no. 21, p. 1; doc. no. 23, ¶ 11.

[38] Doc. no. 22, p. 2.

of wholly frivolous lawsuits is 28 U.S.C. § 1927.[39]  The court, however, is not prepared to award fees under § 1927.

To justify a fee award pursuant to § 1927, "(1) an attorney must engage in 'unreasonable and vexatious conduct'; (2) such 'unreasonable and vexatious conduct' must 'multipl[y] the proceedings'; and (3) the amount of the sanction cannot exceed the costs [fees, and expenses, reasonably] occasioned by the objectionable conduct." *McMahan v. Toto*, 256 F.3d 1120, 1128 (11th Cir. 2001), *amended on reh'g*, 311 F.3d 1077 (11th Cir. 2002) (quoting *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997) (in turn paraphrasing § 1927)).  *See also*, *e.g.*, *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003).  On the whole, the fee applicant must make a strong showing that "an [opposing] attorney's conduct was *objectively reckless*, or *tantamount to bad faith*." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 457 F.3d 1180, 1192 n.1 (11th Cir. 2006) (emphasis supplied).  Here, other than simply

---

[39] In full, § 1927 reads as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.  Notably, "awards pursuant to § 1927 may be imposed only against the offending attorney; clients may not be saddled with such awards." *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001) (internal quotations and citation omitted).

citing § 1927, defendant makes no attempt to argue its applicability. *Cf. Flanigan's Enterprises, Inc. v. Fulton County*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that "fail[ure] to elaborate or provide any citation of authority in support [of an argument]" results in waiver). *Accord U.S. Steel Corp. v. Astrue*, No. 06-15255, ___ F.3d ___, 2007 WL 2318731, slip op. at * 15 n.13 (11th Cir. Aug. 15, 2007) (relying upon *Flanigan* to reach the same conclusion).

Moreover, § 1927 does not *require* sanctions even in cases where the evidence on file clearly indicates that all prerequisites are met. *See* 28 U.S.C. § 1927 (providing that offending attorneys "*may* be required" to satisfy excess expenses) (emphasis supplied); *Amlong & Amlong*, 457 F.3d at 1191 ("If the attorney's misconduct meets th[e] high standard [established by case law interpreting § 1927], the district court *may* order the attorney to pay . . . the excess costs[.]") (emphasis supplied); *Corley v. Rosewood Care Center*, 388 F.3d 990, 1014 (7th Cir. 2004) ("Section 1927 is permissive, not mandatory. The court is *not obliged* to grant sanctions once it has found unreasonable and vexatious conduct. It *may* do so in its discretion.") (emphasis supplied). In light of defendant's failure to persuasively demonstrate the need to apply § 1927 in the present case, the court declines to do so.

**B.    29 U.S.C. § 626(b)**

Another statute cited in defendant's motion is 29 U.S.C. § 626(b), a section of

the Age Discrimination in Employment Act ("ADEA") that incorporates the fee-shifting provision of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). Similar to the controlling principle under § 1927, an award of defense fees predicated upon § 626(b) must be buttressed by "a finding that the plaintiff litigated in bad faith." *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1437 (11th Cir. 1998). *See also id*. at n.19 (noting that "[t]his rule differs significantly from the rule governing the award of attorney's fees to prevailing defendants in Title VII cases"). *See also Cova v. Coca-Cola Bottling Co. of St. Louis*, *Inc.*, 574 F.2d 958, 962 (8th Cir. 1978) ("Section 216(b) [of the FLSA] authorizes the award of attorneys' fees to prevailing plaintiffs but does not authorize such an award for prevailing defendants. Thus, attorneys' fees may be awarded to prevailing defendants in age discrimination cases only under the bad faith exception to the American rule discussed in [relevant Supreme Court cases].").[40]

Again, defendant makes no attempt to explain the applicability of § 626(b) through legal analysis or citation to case law. *Cf. Flanigan's Enterprises*, 242 F.3d at 987 n.16 (holding that an argument is waived if its proponent "fail[s] to elaborate

---

[40] Because this case was voluntarily dismissed with prejudice in order to avoid an adverse judgment, the court will assume, without necessarily deciding, that defendant is the "prevailing party" within the meaning of the relevant statutes. *Cf. Dean v. Riser*, 240 F.3d 505, 511 (5th Cir. 2001) (holding that defendant is a prevailing party under § 1988 when the plaintiff voluntarily dismisses her claim with prejudice in order to avoid an expected unfavorable ruling on the merits).

or provide any citation of authority in support [of it]"). The court's own review of the facts also belies the justness of a § 626(b) fee award. After all, once oriented, plaintiff testified during her deposition that she had no intention of pursuing any claim based upon age discrimination, and her attorney has represented that the words "age discrimination" only found their way into the complaint through a scrivener's error. Defendant has introduced no evidence to contradict plaintiff's testimony or her attorney's representations. Nor did plaintiff or her attorney take any action (other than filing the complaint) to affirmatively pursue age discrimination claims. Indeed, Mr. Penick indicated in a letter that he would not seek relief for his client on such a theory, and plaintiff did not oppose defendant's motion for summary judgment as to the purported age discrimination claim.

Accordingly, there is no basis for concluding that plaintiff litigated an age discrimination claim in bad faith, and the court declines the invitation to award fees under § 626(b).

C.    **42 U.S.C. § 2000e-5(k) and/or 42 U.S.C. § 1988**

Drawing on 42 U.S.C. § 2000e-5(k), the Supreme Court has held that "a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg*

*Garment Co. v. EEOC*, 434 U.S. 410, 421 (1978). *See also* 42 U.S.C. § 2000e-5(k) ("In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee[.]"). This same "stringent standard" applies where, as here, the prevailing defendant also seeks fees pursuant to 42 U.S.C. § 1988. *Hughes v. Rowe*, 449 U.S. 5, 14 (1980). *See also* 42 U.S.C. § 1988(b) ("In any action . . . to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985 and 1986 of this title, . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee[.]"); *Barnes Foundation v. Township of Lower Merion*, 242 F.3d 151, 158 n.6 (3d Cir. 2001) ("The standards for assessing claims for attorney's fees pursuant to section 1988 and under the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(k), are identical.").

Pivoting off the Supreme Court's decisions in this area, the Eleventh Circuit has identified three non-exclusive considerations that district courts should take into account in weighing a prevailing defendant's motion for attorneys' fees: "'(1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits.'" *Quintana v. Jenne*, 414 F.3d 1306, 1309 (11th Cir. 2005) (quoting *Sullivan v. School Board of Pinellas County*, 773 F.2d 1182, 1189 (11th Cir. 1985)). When these factors suggest an award of attorneys' fees for a prevailing

defendant, the Eleventh Circuit has held that an award should issue unless "special circumstances that justify making no award of fees" exist. *Head v. Medford*, 62 F.3d 351, 356 (11th Cir. 1995). *Cf. Christiansburg*, 434 U.S. at 418 (noting that § 2000e-5(k) is cast in "permissive and discretionary language"); *Panola Land Buying Association v. Clark*, 844 F.2d 1506, 1524 (11th Cir. 1988) (noting that "the [Equal Access to Justice Act], *unlike section 1988*, provides for *mandatory* awards of attorney's fees") (emphasis supplied).

Here, the *Sullivan* factors are not extraordinarily helpful. While defendant did, in a loose manner of speaking, offer to "settle" the case, it did not offer to pay any money to plaintiff. *Cf. Quintana*, 414 F.3d at 1310 ("In the absence of evidence of an offer of a substantial amount in settlement, this factor does not support either party."). Also, the court dismissed the case on plaintiff's motion, prior to trial — indeed, dismissal was ordered on account of voluntarily stipulation even prior to a ruling on defendant's summary judgment motion. Due to this, the court was not in a position to assess whether plaintiff's "claims [were] meritorious enough to receive careful attention and review." *Walker v. Nationsbank of Florida, N.A.*, 53 F.3d 1548, 1559 (11th Cir. 1995). Rather, the court credited plaintiff's generic statement that she could not successfully oppose summary judgment. For that same reason, it is difficult (not to mention awkward) to *now* attempt to ascertain whether plaintiff *could have*

established a *prima facie* case of retaliation, as she asserts in her opposition to the motion for attorneys' fees.[41]

Even assuming plaintiff failed to make out a *prima facie* case — and, by extension, that the most important of the *Sullivan* factors favors defendant — the court believes there are "special circumstances" that make a fee award unnecessary and inappropriate. *Head*, 62 F.3d at 356. As mentioned above, plaintiff herself indicated as early as her deposition that she did not intend to pursue any claim of racial discrimination. Her attorney likewise informed defense counsel prior to the dispositive motion deadline that she had no desire to litigate any claim other than her retaliation cause of action. His statement to this effect could have come sooner (*i.e.*, within the thirty days that defense counsel allotted for a response to his letter), but the court is not unfamiliar with the pressures of the legal profession, and sees no equity in shifting fees on this basis.

With respect to the retaliation claim specifically, defendant argues that it should have been voluntarily dismissed much earlier for failure to exhaust administrative remedies. But as outlined above, and as alluded to in Mr. Penick's

---

[41] Plaintiff claims that her voluntary dismissal was motivated by a failure of proof regarding pretext, not the inability to create an initial presumption of discrimination. *See* doc. no. 25, p. 5. Although the court need not explicitly reach this issue, there is no overt evidence in the record to contradict plaintiff's assertion.

letter, there is no exhaustion requirement prior to bringing § 1981-based retaliation claims. Plaintiff and her attorney ultimately decided that she had little chance of prevailing as to that claim, but nothing presented to the court indicates that her realization came so egregiously late as to make her temporary pursuit of the claim "frivolous, unreasonable, or without foundation." *Christiansburg*, 434 U.S. at 421.

In summary, "the award of attorney's fees under Section 1988 is discretionary," *Procup v. Strickland*, 760 F.2d 1107, 1113 (11th Cir. 1985); and, after a full review of the facts, the court believes that this is a case in which it should exercise its discretion to decline any such award. *See also Christiansburg*, 434 U.S. at 418 (discussing the "permissive and discretionary language" of § 2000e-5(k)).

### III. CONCLUSION AND ORDER

In accordance with the foregoing, it is ORDERED that defendant's motion for attorneys' fees be, and the same is hereby, DENIED.

DONE this 21st day of September, 2007.

_____
United States District Judge